IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

```
JAMES UN,                                )
                                         )
            Plaintiff,                   )
                                         )        CIVIL ACTION
v.                                       )
                                         )        No. 14-2374-JWL
CAROLYN W. COLVIN,                       )
Acting Commissioner of Social Security,  )
                                         )
            Defendant.                   )
_____)
```

MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits under sections 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 1381a and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Commissioner's decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

I.      Background

Plaintiff applied for SSI benefits, alleging disability beginning January 1, 2007. (R. 12, 120).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  Plaintiff filed this case pro se (Doc. 1), and on January 15, 2015 filed a Social Security Brief pro se.  (Doc. 11).  The

Commissioner filed her responsive Social Security Brief on April 13, 2015. (Doc. 18). Counsel made an Entry of Appearance for Plaintiff (Doc. 19), sought leave to file a supplemental brief (Doc. 20), filed a new "Plaintiff's Initial Brief" (Doc. 22) (hereinafter Pl. Br.), and sought an order setting new briefing deadlines. (Doc. 23). The court granted Plaintiff's motions (Docs. 21, 24), and the Commissioner filed another "Brief of the Commissioner" on August 12, 2015. (Doc. 25) (hereinafter Comm'r Br.). Plaintiff did not file a Reply Brief. Plaintiff now claims two errors in the decision below--that the Administrative Law Judge (ALJ) failed to account for all of the limitations resulting from Plaintiff's mental impairments (Pl. Br. 8-13), and that he erroneously failed to apply the Frey factors when considering the lack of medical treatment for Plaintiff's obsessive-compulsive disorder (OCD). (Pl. Br. 13) (citing Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987)).

    The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that on judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that Plaintiff has not demonstrated error in the decision, and will address each alleged error in the order presented in Plaintiff's Brief.

## II.    Limitations Resulting from Plaintiff's Mental Impairments

Plaintiff claims that in finding that Plaintiff is limited to "jobs that require understanding, remembering and carrying out only simple instructions," the ALJ ignored evidence of additional nonexertional limitations.  (Pl. Br. 8) (quoting R. 16).  He claims the ALJ ignored his testimony at the hearing and his reports elsewhere in the record, the third party function report completed by his mother, and the findings in Dr. Wilkinson's

assessment. (Pl. Br. 9-10). He argues that the ALJ's finding that Plaintiff is limited to jobs that require understanding, remembering, and carrying out only simple instructions, merely "echo[s] the definition of 'unskilled work,'" id. at 10, and that a limitation to "simple work" or "unskilled jobs" is generally insufficient to address a claimant's mental impairments. Id. at 11 (citing Chapo v. Astrue, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012); Social Security Ruling (SSR) 96-8p; and SSR 85-15). Plaintiff argues that the limitation to jobs that require understanding, remembering, and carrying out only simple instructions does not account for Plaintiff's difficulty dealing with the public, coworkers, and supervisors; or his difficulty dealing with routine changes in the work environment, and that remand is necessary to consider and properly account for such difficulties. Id. at 11-12. He argues that although the ALJ determined that Plaintiff has a moderate limitation in maintaining concentration, persistence, and pace, his limitation to jobs that require understanding, remembering and carrying out only simple instructions, does not adequately account for that moderate limitation. Id. at 12.

The Commissioner argues that the ALJ properly found that Plaintiff is limited to jobs requiring understanding, remembering, and carrying out only simple instructions, and that the ALJ's RFC assessment adequately accommodated Plaintiff's OCD-related limitations. She argues that the ALJ explained his findings and that those findings are supported by the record evidence. She argues that the ALJ properly weighed the medical opinions and rejected certain portions of Dr. Wilkinson's opinion. She points out the

ALJ's reliance on Plaintiff's mother's statements that Plaintiff can work, and the finding that Plaintiff's allegations of disabling symptoms are not credible. (Comm'r Br. 4-11).

As the Commissioner's Brief suggests, the evidence Plaintiff contends the ALJ ignored was not ignored, but was in fact specifically considered and discussed in the decision at issue here. As to Plaintiff's testimony at the hearing and other reports in the record, the ALJ specifically considered those reports and that testimony both in his step two discussion and in his RFC assessment. (R. 14-15, 17-19). And, he found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." (R. 17). Plaintiff argues that the ALJ's finding is erroneous, and that argument will be considered later in this opinion. Nonetheless, Plaintiff's argument that the ALJ ignored his testimony and other reports must fail.

The same result is reached regarding the report of Plaintiff mother, because as the Commissioner points out, the ALJ specifically noted her statement that "the claimant 'can do work.'" (R. 18) (quoting Ex. 7E, p. 3, R. 183). In fact, as the Commissioner points out, Plaintiff's mother apparently misunderstood the disability process, and requested that the Social Security Administration give a job to Plaintiff. (R. 181) ("Please! Give a job to [Plaintiff.] I know [he] will work very hard and do good work."); (R. 182) ("Please, give to [Plaintiff] a job."); (R. 183) ("I believe [Plaintiff] need[s] a job (right for him he can do well)."). Although the ALJ said nothing more in the decision about Plaintiff's mother's function report, he is not required to do so. The law in the Tenth Circuit is that an ALJ is not required to make specific written findings of credibility regarding a third-party

opinion if the written decision reflects that the ALJ considered it. Blea, 466 F.3d at 915; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996). The decision here reflects that the ALJ considered Plaintiff's mother's report. He did not ignore it.

The ALJ specifically considered and discounted the medical opinion of Dr. Wilkinson:

> In making this finding, the undersigned considered the State agency psychologists' opinions. Sallye M. Wilkinson, Ph.D., opined that the claimant has no limitations in concentration, persistence, and pace, but she also opined that the claimant should have infrequent interaction with other [sic] because he would be distracted working in proximity to others (Ex. 4A). This opinion is inconsistent with the claimant's reportedly cooperative and friendly demeanor and the claimant's ability to shop, go to the bank, and successful completion of college and law school. The undersigned assigns some weight to this opinion but finds that the claimant has mild limitations in social interaction and moderate limitations in concentration, persistence, and pace.

(R. 20). Once again, it is clear that despite Plaintiff's contrary allegations, the ALJ did not ignore Dr. Wilkinson's opinion. Rather, he discounted the opinion and explained his reasons for doing so. Plaintiff's Brief does not allege error in that finding, and in failing to do so, he has waived any argument in that regard. Franklin Sav. Corp. v. U.S., 180 F.3d 1124, 1128 n.6 (10th Cir. 1999) (arguments presented superficially are waived).

Plaintiff has failed to show that the ALJ ignored the evidence upon which Plaintiff relies. His argument that the RFC assessed does not account for either Plaintiff's difficulty dealing with the public, coworkers, and supervisors; or his difficulty dealing with routine changes in the work environment fails because the ALJ found that Plaintiff does not have these difficulties, and Plaintiff has not shown error in that finding.

7

Next, Plaintiff argues that the ALJ's finding that he is limited to jobs that require understanding, remembering, and carrying out only simple instructions, merely echos the definition of unskilled work.  While it is true that the abilities to understand, remember, and carry out simple instructions are basic mental work activities necessary to perform most jobs including unskilled work, they are not the only such activities necessary to perform unskilled work.  20 C.F.R. § 416.921(b).  Rather, basic mental work activities include the abilities to use judgment; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with changes in a routine work setting, id., and the ALJ recognized as much.  (R. 19) (defining basic mental work activities).

Moreover, the ALJ did not find that Plaintiff was limited in these additional basic mental work activities.  And, despite Plaintiff's argument that the ALJ ignored evidence that Plaintiff had limitations in these abilities, as noted above the ALJ did not ignore that evidence but weighed it and explained why he did not accept it.  Plaintiff has shown no error.  Having failed to show error in the ALJ's consideration of that evidence, Plaintiff cannot argue that the ALJ's mental RFC assessment was merely a limitation to simple work or unskilled jobs.  The ALJ specifically considered and rejected the limitations upon which Plaintiff relies to suggest that he is unable to perform unskilled work.  Chapo and the other cases cited by Plaintiff do not apply here because the ALJ here did not merely limit Plaintiff to simple work or unskilled jobs, but considered all of Plaintiff's alleged mental limitations and rejected them.

Finally, Plaintiff's argument that the ALJ's limitation to jobs that require understanding, remembering and carrying out only simple instructions, does not adequately account for his determination that Plaintiff has a moderate limitation in maintaining concentration, persistence, and pace must also fail.  As discussed above, the ALJ did not merely limit Plaintiff to simple work or unskilled jobs.  Moreover, as the ALJ explained, "[t]he limitations identified in the 'paragraph B' criteria [such as moderate limitations in maintaining concentration, persistence, and pace] are not a residual functional capacity assessment," because a mental RFC assessment "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings."  (R. 16).  And, in his RFC assessment, the ALJ specifically performed that "more detailed assessment" which is required, and determined that Plaintiff has the abilities to understand, remember, and carry out simple instructions but not detailed instructions and that he has the abilities to respond appropriately to supervisors, co-workers, and usual work situations, and to deal with changes in a routine work setting.  (R. 19-20).  Plaintiff has shown no error in the ALJ's evaluation of his mental limitations.

### III.  Credibility Determination

Plaintiff claims the ALJ determined that his allegations of disabling symptoms were not credible because he refused treatment for OCD, and argues the determination is erroneous because the ALJ did not apply the Frey test.  The Commissioner argues that the Frey test applies only to those situations where a claimant has refused or failed to follow

9

prescribed medical treatment, whereas the holding of Qualls v. Apfel, 2066 F.3d 1368, 1372-73 (10th Cir. 2000) applies to cases such as this where the ALJ relies upon Plaintiff's failure or half-hearted attempts to seek treatment for his alleged limitations. The Commissioner points out that the ALJ also relied upon other factors in discounting the credibility of Plaintiff's allegations.

### A. The ALJ Explained His Evaluation of Plaintiff's Allegations

The ALJ found that Plaintiff's allegations of disabling symptoms "are not entirely credible." And, as Plaintiff argues, the ALJ noted that Plaintiff "has a minimal history of mental health treatment and a history of poor compliance with recommended treatment," as two bases for discounting Plaintiff's credibility. (R. 17). However, Plaintiff does not mention the other bases upon which the ALJ rested his credibility determination. The ALJ also noted that although Plaintiff testified that his providers recommended outpatient therapy before using psychotropic medication, the record reveals that Plaintiff actually rejected treatment with medication and stated that he would prefer therapy before medication. (R. 18). The ALJ noted that Plaintiff's daily activities include going to the bank, shopping when necessary, driving, cooking daily, independent personal care, and doing household chores, and contradict his assertion that OCD dominates his life. (R. 18). The ALJ noted that Plaintiff obtained a law degree and passed the bar examination in Missouri during the time that he alleged he was disabled and that Plaintiff's clinical signs and findings on psychological examinations were inconsistent with his allegations of disabling mental limitations. Id. Lastly, the ALJ noted two other factors that decrease

the credibility of Plaintiff's subjective complaints--his mother stated he can work, and he told Dr. Neufeld that he "feels he can perform office work." (R. 18).

### B.     Standard for Evaluating Credibility

The court's review of an ALJ's credibility determination is deferential. Credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144; Hackett, 395 F.3d at 1173 (same).

### C.     Analysis

As Plaintiff argues, the ALJ found Plaintiff's minimal history of mental health treatment and history of poor compliance with recommended treatment were two bases for discounting Plaintiff's credibility. But, he also explained those findings:

> The claimant first sought counseling from the Health Care Access Clinic in April 2011, one month after he filed for disability benefits (Ex. 2E; 3F, p.3). The claimant visited a counselor twice in April 2011 and once in May 2011

11

> (Ex. 3F, p.3-5). The claimant was encouraged to follow-up with his counselor in June 2011, but did not seek outpatient therapy again until April 2012 (Ex. 6F). After his cancer diagnosis in April 2012, the claimant attended counseling with at [sic] Health Care Access twice (Ex. 10F, p.2-3).
>
> Furthermore, in March 2012, the claimant participated in an intake evaluation with the Bert Nash Mental Health Center at the urging of his disability attorney (Ex. 9E p.2). Despite his counselor's recommendation that he follow-up with Bert Nash, the claimant has not sought mental health treatment since April 2012 (Ex. 10F, p.2-3). The claimant testified he has not sought mental health treatment for several reasons, including difficulty scheduling around his cancer treatment, fatigue, and a lack of financial resources. However, the record reveals the claimant refused to seek treatment from Bert Nash as early as March 2011 (Ex. 3F, p.7).

(R. 17-18).

From this explanation, it is clear that the ALJ was focused on the scarcity of Plaintiff's attempts to relieve his symptoms. He noted that Plaintiff did not seek mental health treatment till one month <u>after</u> he applied for disability, although he alleged disability due to mental impairments. He noted that even then Plaintiff only had three visits and stopped despite being encouraged to continue follow-up. He noted that almost a year later Plaintiff again sought mental health treatment, but only after the urging of his disability attorney. He recognized the reasons Plaintiff gave for not seeking treatment in 2012, but noted that Plaintiff had refused to seek treatment before those alleged reasons came into being. As the Commissioner argues, the ALJ here was focused on Plaintiff's lack of attempts to relieve his symptoms as in <u>Qualls</u>, and in those circumstances it is not necessary to apply the <u>Frey</u> test. Moreover, as discussed above the ALJ provided six additional reasons to discount the credibility of Plaintiff's allegations, and Plaintiff does

not suggest error in relying on those reasons.  Plaintiff has shown no error in the ALJ's credibility determination.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 29th  day of September 2015, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**